J-S47001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: B.A.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.A.D., MOTHER | No. 428 MDA 2015 |

Appeal from the Order and Decree entered January 29, 2015,
in the Court of Common Pleas of Centre County,
Orphans' Court, at No(s): 4012-2014

| | |
|---|---|
| IN RE: D.M.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.A.D., MOTHER | No. 429 MDA 2015 |

Appeal from the Order and Decree entered January 29, 2015,
in the Court of Common Pleas of Centre County,
Orphans' Court, at No(s): 4014-2014

| | |
|---|---|
| IN RE: H.R.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.A.D., MOTHER | No. 430 MDA 2015 |

Appeal from the Orders and Decrees entered January 29, 2015,
in the Court of Common Pleas of Centre County,
Orphans' Court, at No(s): 4013-2014

BEFORE: ALLEN, OTT, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JULY 20, 2015**

B.A.D. ("Mother") appeals from the orders and decrees involuntarily terminating her parental rights to her three minor children: B.A.D., a female born in July of 2008; H.R.D., a female born in February of 2010; and

---

* Retired Senior Judge assigned to the Superior Court.

D.M.D., a male born in August of 2011 (collectively, "the Children").[1]

Additionally, Mother's counsel has filed a petition for leave to withdraw as

counsel and brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).

Upon review, we grant counsel's petition to withdraw and affirm the orphans'

court's orders and decrees.

The orphans' court summarized the relevant factual history as follows:

Centre County Children and Youth Services ("CYS") became involved with the family shortly after the birth of [Mother's] firstborn child, B.A.D. . . . CYS has been involved with the family due to concerns regarding home conditions, hygiene, and physical abuse, as well as general issues with [Mother's] mental health, parenting skills, housing and homelessness. A Dependency Petition was filed on July 19, 2013, and an Order of Adjudication and Disposition finding the three children dependent was entered on August 6, 2013. The [C]hildren were permitted to remain in the care of [Mother]. On August 27, 2013, only twenty-one days later, the [c]ourt entered an Order for Emergency Protective Custody in response to an Application for Emergency Protective Custody filed by CYS. As such, the [C]hildren were placed in foster care. A Disposition Hearing was held on September 24, 2013. As a result of the hearing, the [c]ourt made a finding of abuse with respect to an injury to H.R.D., and the [C]hildren remained in foster care.

Orphans' Court Opinion, 3/19/15, at 1-2.[2]

On November 25, 2014, CYS filed petitions to involuntarily terminate

Mother's parental rights to the Children. A termination hearing was held on

---

[1] The Children's father, T.M., voluntarily relinquished his parental rights to the Children at the start of the termination hearing. T.M. is not a party to this appeal.

[2] The orphans' court filed a separate opinion for each of the three Children. However, these opinions differ only slightly, such that separate citations are not required.

January 27, 2015. On January 29, 2015, the orphans' court entered its orders and decrees terminating Mother's parental rights. Mother timely filed notices of appeal on February 25, 2015, along with concise statements of errors complained of on appeal. On May 29, 2015, Mother's counsel filed a petition for leave to withdraw as counsel, as well as a brief pursuant to **Anders, supra**.

Before reaching the merits of the issue raised in the **Anders** brief, we first must address counsel's request to withdraw. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting **Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)). To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of **Anders** that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy

- 3 -

of the letter sent to their client advising him or her of their rights."

***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an ***Anders*** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

In the present appeal, Mother's counsel has filed a petition with this Court for leave to withdraw, certifying that he has reviewed the case and determined that Mother's appeal is wholly frivolous. Counsel has filed a brief that includes a summary of the history and facts of the case, with citations to the record; a point of arguable merit; and counsel's analysis of why he has concluded that the appeal is frivolous, with citations to legal authority supporting that conclusion. Counsel has certified that he served Mother with a copy of the ***Anders*** brief, and attached a copy of his letter to Mother advising her that she may obtain new counsel or raise additional issues *pro*

*se*.[3]   Accordingly, counsel has complied with the requirements of **Anders**

and **Santiago**.   We therefore proceed to an independent review of the

record, and the issue that counsel states arguably supports an appeal.

Counsel's **Anders** brief raises the following issue for our review:

"Whether the orphans' court committed an abuse of discretion or error of

law when it concluded that [CYS] established grounds for termination of

parental rights under 23 Pa.C.S.A. §[]2511(a)(2), (a)(5), and/or (a)(8)?"

**Anders** Brief at 8.

We consider this issue mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases
> requires appellate courts to accept the findings of fact and
> credibility determinations of the trial court if they are supported
> by the record.  If the factual findings are supported, appellate
> courts review to determine if the trial court made an error of law
> or abused its discretion.  A decision may be reversed for an
> abuse of discretion only upon demonstration of manifest
> unreasonableness, partiality, prejudice, bias, or ill-will.  The trial
> court's decision, however, should not be reversed merely
> because the record would support a different result.  We have
> previously emphasized our deference to trial courts that often
> have first-hand observations of the parties spanning multiple
> hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks

omitted).

Termination of parental rights is governed by Section 2511 of the

Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated

analysis.

---

[3] Mother has not responded to counsel's application to withdraw.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to Sections 2511(a)(2), (5), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(8) and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \*\*\*
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

- 6 -

***

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8) and (b).

We first address whether the trial court abused its discretion by terminating Appellants' parental rights pursuant to Section 2511(a)(8).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). "Notably, termination under Section 2511(a)(8), does not require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted).

Instantly, the orphans' court concluded that the Children have been out of Mother's care for greater than 12 months, and that Mother has failed to remedy the conditions resulting in their removal. Orphans' Court Opinion,

3/19/2015, at 5. The court also found that termination of Mother's parental rights would best serve the needs and welfare of the Children. *Id.* at 5-6.

After a thorough review of the testimony presented during the termination hearing, we conclude that the orphans' court did not abuse its discretion. Ms. Raelee Hulek testified that she is a reunification counselor for the Centre County Youth Service Bureau's reunification program. N.T., 1/27/15, at 8. Ms. Hulek explained that the conditions which resulted in the removal of the Children from Mother's care have not been remedied. *Id.* at 44. Specifically, Mother has not been able to secure appropriate housing for the Children, nor has she been able to secure income sufficient to care for them. Mother reported to Ms. Hulek that she is residing in a three-bedroom home with her parents, as well as two other individuals. *Id.* at 13-14. Critically, one of those individuals is Mother's boyfriend, C.S., who has a history of engaging in inappropriate contact with minors, and who recently was discharged unsuccessfully from a sex offender treatment program. *Id.* at 11, 19-20. At the time CYS filed its termination petition, Mother was working at a part-time cleaning job. *Id.* at 15-16, 35-36. By the time of the termination hearing, Mother no longer was employed. *Id.* at 15-16.

Ms. Hulek further testified that Mother never progressed beyond biweekly supervised visitation with the Children, that Mother was "frequently overwhelmed" even during these limited visits, and that Mother displayed poor parenting skills. *Id.* at 21-28. For example, Ms. Hulek described a

visit during which the Children were playing outside, near a busy road.  *Id.* at 25-26.  Ms. Hulek requested on multiple occasions that Mother position herself so that she could prevent D.M.D. from running out into the road if he attempted to do so.  *Id.* at 26-27.  Mother declined these requests, and only "angle[d] her back slightly so she had a little bit of a more clear view of the busy road . . . ."  *Id.* at 27.  When D.M.D. attempted to run toward the road, it was Ms. Hulek who was there to stop him.  *Id.* at 39.  Ms. Hulek concluded that Mother is unable to ensure the safety of the Children, or to meet their basic needs.  *Id.* at 33.

Accordingly, the record supports the conclusion of the orphans' court that the Children have been out of Mother's care for greater than 12 months, and that Mother has failed to remedy the conditions resulting in their removal.  Moreover, it is clear that termination of Mother's parental rights would meet the needs and welfare of the Children.  CYS caseworker Robin Cain testified that the Children reside together in a preadoptive foster home.  *Id.* at 59.  The Children have "a very strong and appropriate bond" with their foster parents and, when the Children are upset, they seek out their foster parents for the comfort that they need.  *Id.* at 57-58.  Ms. Hulek agreed that the Children are very comfortable and affectionate with their foster parents, that the Children seek out the foster parents when they need something, and that the Children call the foster parents "mother and father."

*Id.* at 44-45. The Children have been "bonding with them appropriately."

*Id.* at 45.

Although Mother does not raise a claim regarding Section 2511(b), we recognize:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and

citations omitted).

Here, the orphans' court concluded that a bond exists between Mother

and the Children, but that the termination of Mother's parental rights would

best serve the Children's needs and welfare. Orphans' Court Opinion,

3/19/15, at 5-6. The court emphasized the bond between the Children and

- 10 -

their foster parents, and the safe, stable, and nurturing environment that the foster parents provide. *Id.*

Again, we conclude that the orphans' court did not abuse its discretion. Ms. Hulek testified that D.M.D. and H.R.D. refer to Mother as "mother," but that they also refer to their foster parents as "mother and father." N.T., 1/27/15, at 40. B.A.D. sometimes refers to Mother as "mother," and sometimes refers to her by her first name. *Id.* Ms. Hulek noted that B.A.D. occasionally is hesitant to interact with Mother, and that she at times actively avoids interacting with her. *Id.*

Ms. Cain testified that the Children have a bond with Mother. *Id.* at 57-58. However, she opined that it would be in the Children's best interest for Mother's parental rights to be terminated due to Mother's inability to care for them. *Id.* at 58. Ms. Cain noted that there have been times when the Children have returned visibly upset and crying after visits with Mother. *Id.* at 52.

Thus, the record again supports the conclusion of the orphans' court that terminating Mother's parental rights would serve the needs and welfare of the Children. While the Children still retain a bond with Mother, it is clear that this bond is outweighed by Mother's inability to care for the Children, and by the Children's need for permanence and stability. *See C.D.R.*, 111 A.3d at 1220 (concluding that the appellant/mother's bond with C.D.R was

outweighed by the mother's "repeated failure to remedy her parental incapacity," and by C.D.R.'s need for permanence and stability).

Accordingly, our independent review supports counsel's determination that Mother has no meritorious issues for appeal. Therefore, we grant counsel's petition for leave to withdraw and affirm the orphans' court's orders and decrees.

Petition for leave to withdraw granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2015